UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

04 SEP 30 PM 3: 29

⌐·' ⌐·'

'···. ·· ALABAMA

| BOBBY DARRYL BRACKNELL, | ] |
| | ] |
| Plaintiff(s), | ] |
| | ] |
| vs. | ] CV-02-CO-01817-W |
| | ] |
| INTERNATIONAL PAPER COMPANY, | ] |
| | ] |
| Defendant(s). | ] |

**ENTERED**

SEP 3 0 2004

## MEMORANDUM OF OPINION

### I.   Introduction

The court currently has for consideration defendant International Paper Company's (IP) motion for summary judgment, which was filed on November 20, 2003. (Doc. 43.) The plaintiff, Bobby Darryl Bracknell, claims that the defendant, IP, discriminated against him in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 2611, *et. seq.*; violated the reinstatement provision of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2611, *et. seq.*; and committed acts of retaliation under both the ADA and FMLA.  (Doc. 12.)  The issues raised in Defendant's motion for summary judgment have been fully briefed by both parties and are now ripe

for decision.[1]  Upon due consideration, Defendant's motion is due to be

granted in all respects.

II.    Facts[2]

The plaintiff, Bobby Darryl Bracknell, began working for the

defendant, IP, at the Tuskalusa Lumber Mill in Moundville, Alabama, in 1982.

He was hired as a chip car tender and was later transferred to a saw filer

position.  On February 22, 2001, Mr. Bracknell visited Dr. Richard Champion

complaining of chest congestion, shortness of breath, coughing up sputum

or blood, chills, and flu-like aching—symptoms he says he suffered since

1999.  After testing, Dr. Champion diagnosed Mr. Bracknell with chronic

interstitial pneumonia consistent with hard metal pneumoconiosis.  Mr.

---

[1]At this time, there is one pending motion to compel, which was filed by the plaintiff on October 20, 2003.  (Doc. 37.)  No Rule 56(f) affidavit has been filed, however, and both parties have made oral representations to the court that the disposition of this motion is not material to the outcome of Defendant's motion for summary judgment. Both parties have asked that the court stay its ruling on the pending motion to compel until after summary judgment proceedings have been completed.

[2]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Bracknell asked for, and was granted, medical leave in April of 2001.  Mr. Bracknell informed IP that when he returned to work, he was restricted from working in areas where he would be exposed to cobalt or other hard metals. This restriction, however, prevented Mr. Bracknell from returning to his assigned shift as a saw filer. Mr. Bracknell then requested, and was granted, additional medical leave in May of 2001.

Mr. Bracknell's twelve weeks of FMLA leave expired in July of 2001. At that time, Mr. Bracknell was still restricted from working in areas where he would be exposed to hard metal and could not return to his assigned shift as a saw filer. Mr. Bracknell requested that IP transfer him to the midnight shift. IP did not transfer Mr. Bracknell. In subsequent months, Mr. Bracknell requested additional accommodations from IP, including placement in other positions in the facility, installing vacuum systems, and building him a separate room in which he could work. He was not assigned to any other positions, and IP did not implement any of Mr. Bracknell's suggested accommodations.

In January of 2002, Dr. Champion released Mr. Bracknell to return to work but continued to restrict Mr. Bracknell from exposure to hard metal

dust.[3]  In February of 2002, IP assigned Mr. Bracknell to a vacant utility

worker position.  After working less than a month, Mr. Bracknell claimed

that position also made him ill and ceased work.  He subsequently requested

a transfer and an environmental investigation of the facility.  IP did not

grant these requests.

III.   Standard

Summary judgment is proper "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c).  The party moving for summary judgment "always bears the initial

responsibility of informing the district court of the basis for its motion, and

---

[3]Defendant claims that Dr. Champion released Mr. Bracknell to work with no stated restrictions. (Doc. 71 at 6.) Plaintiff claims Dr. Champion released Mr. Bracknell to return to his previous position with a respirator. (Doc. 70 at 5.) Dr. Champion's notes actually reveal that he released Mr. Bracknell to work on January 4, 2002, without stating any restrictions (Doc. 45, Exhibit 2 at ex.14), but then wrote a subsequent letter on January 31, 2002, specifying that  Mr. Bracknell could work with the assistance of a respirator, provided he was not exposed to hard metal dust (Doc. 45, Exhibit 2 at ex. 16).   This dispute of fact is not material to Mr. Bracknell's ADA claims and Dr. Champion's "release" was submitted well after the expiration date of Mr. Bracknell's FMLA leave in July of 2001.  Therefore, this dispute has no effect on the disposition of Defendant's motion for summary judgment.

identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex,* 477 U.S. at 322–23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta,* 281 F.3d

1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Discussion

    A.    ADA Claims

In his complaint, Mr. Bracknell claims that the defendant violated the ADA because IP intentionally discriminated against him because of his disability and consistently failed and refused to provide him with reasonable accommodations for his disability.  (Doc. 12 at 1, 5.)  The ADA prohibits employers[4] from discriminating against "a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). In order to establish a prima facie case of discrimination under the ADA, however, a plaintiff must show that: (1) he has a disability, (2) he was a "qualified individual" at the relevant time who could perform the essential functions of the job in question with or without reasonable accommodations, and (3) he was discriminated against because of his

---

[4]The defendant does not dispute that it is an "employer" for the purposes of the ADA.

disability. *Lucas v. W. W. Grainger, Inc.*, 257 F. 3d 1249, 1255 (11th Cir. 2001).

In its motion for summary judgment, IP contends that Mr. Bracknell has failed to establish that he has a disability that merits the protection of the ADA. (Doc. 43 at 2.)  The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." *Rossbach v. City of Miami*, 371 F.3d 1354, 1357 (11th Cir. 2004).  In his complaint, Mr. Bracknell alleges that he meets all three of these statutory definitions. (Doc. 12 at 5.)  Thus, the court will address each assertion in turn.

1.    Substantially Limiting Impairment

The first definition of "disability" involves a three-step analysis. *Rossbach*, 371 F.3d at 1357 (citing *Bragdon v. Abbott*, 524 U.S. 624 (1998)). First, a plaintiff must be physically or mentally impaired.  Second, the life activity the plaintiff claims has been limited must be a "major life activity" under the ADA. *Id*.  "Major life activities," according to EEOC regulations, include "functions such as caring for oneself, performing manual tasks,

walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii).[5]   Finally, the plaintiff must establish that the impairment "substantially limits" that life activity. *Rossbach*, 371 F.3d at 1357.   The U.S. Supreme Court has held that these "terms need to be interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 197 (2002).

There is no dispute that Mr. Bracknell suffers from a respiratory hypersensitivity that qualifies as a physical impairment. Mr. Bracknell asserts that this impairment is a disability under the ADA because it substantially limits his major life activities of breathing and working.[6] Both

---

[5]The Eleventh Circuit "frequently looks to the EEOC regulations for interpretive guidance regarding Subsection A of the ADA." *Rossbach v. City of Miami*, 371 F.3d 1354, 1357 n.4 (11th Cir. 2004).

[6]In his brief in opposition to Defendant's motion for summary judgment, Mr. Bracknell only argued that he was substantially limited in the major life activity of breathing and cited the idea that the major life activity of working should be examined only if there is no limitation on any other major life activity. (Doc. 70 at 9.) The U.S. Supreme Court also has noted this proposition. *Sutton v. United Air Lines*, 527 U.S. 471, 492 (1999) ("Indeed, even the EEOC has expressed reluctance to define 'major life activities' to include working and has suggested that working be viewed as a residual life activity, considered, as a last resort, *only* 'if an individual is not substantially limited with respect to *any other* major life activity.'") (quoting 29 C.F.R. pt. 1630, App. § 1630.2(j) (1998)). In Mr. Bracknell's amended complaint, however, Plaintiff asserts that his condition "limits his ability to, *inter alia*, work in a class of jobs or a broad range of jobs." (Doc. 12 at 2.) In order to be thorough, and because Mr. Bracknell has not established by sufficient evidence that he is substantially limited in the major life

breathing and working are included in the EEOC's regulations, 45 C.F.R. §

84.3(j)(2)(ii), and are activities "significant" to everyday life. *See Bragdon*,

524 U.S. at 638. Mr. Bracknell cannot qualify as disabled under the ADA,

however, simply because his respiratory problems impair or hinder his ability

to breathe and/or work.  Rather, these major life activities must be

*substantially limited.*

The EEOC defines "substantially limited" as "significantly restricted

as to the condition, manner, or duration under which the average person in

the general population can perform the same major life activity." 29 C.F.R.

§ 1630.2(j)(1). The regulations also state that the following factors should

be considered when determining whether an individual is substantially

limited in a major life activity: "(i) [t]he nature and severity of the

impairment; (ii) [t]he duration or expected duration of the impairment; and

(iii) [t]he permanent or long term impact, or the expected permanent or

long term impact of or resulting from the impairment." *Id.* § 1630.2(j)(2).

There is no such thing as a "per se" disability.  Rather, the determination

---

activity of breathing, the court will examine Mr. Bracknell's claims with regard to the
major life activity of working.

of "whether a person has a disability under the ADA is an individualized inquiry." *Sutton v. United Air Lines*, 527 U.S. 471, 483 (1999); *see also Chenoweth v. Hillsborough County*, 250 F.3d 1328, 1330 (11th Cir. 2001) ("We look at [the plaintiff's] individual circumstances.").

        a.     Breathing

Mr. Bracknell has failed to provide sufficient evidence of respiratory difficulties that amount to a substantial limitation of the major life activity of breathing for the purposes of the ADA.  Mr. Bracknell has presented evidence that he was diagnosed by Dr. Champion with chronic interstitial pneumonia in 2001.  He also asserts that another doctor diagnosed him with scarred lungs and restricted respiratory capacity.  (Doc. 70 at 3 n.2.)  It is "insufficient," however, for a plaintiff to prove disability status through the mere submission of evidence of a medical diagnosis of an impairment. *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 198 (2002).  Rather, plaintiffs must offer evidence that addresses the extent to which their impairment limits them "in terms of their own experience." *Id.*  (quoting *Albertson's, Inc. v. Kirkinburg*, 527 U.S. 555, 567 (1999)).

Mr. Bracknell argues in his brief in response to Defendant's motion for summary judgment that he is limited in the major life activity of breathing because he is now "extremely sensitive to other agents within the environment, causing [Mr.] Bracknell to develop antibodies and/or experience asthma or pneumonia-like symptoms when exposed to such agents. Thus, unlike the average adult, [Mr.] Bracknell must be extremely careful to avoid agents which will aggravate his symptoms." (Doc. 70 at 2.) This sensitivity, he asserts, is expected to last indefinitely. (*Id.* at 9.) Mr. Bracknell also argues that he has "limited physical endurance [because he] can no longer participate in sports and . . . develops shortness of breath when climbing stairs." (*Id.* at 3.)

Evidence of respiratory hypersensitivity to environmental agents, without more, is not sufficient to establish a substantial limitation on the major life activity of breathing. Hypersensitivity is just a name for an impairment that reveals nothing about how the impairment actually limits Mr. Bracknell's ability to function. This diagnosis of hypersensitivity, combined with Mr. Bracknell's evidence of shortness of breath after climbing stairs and an inability to participate in some sports, is insufficient

to create a genuine issue of material fact as to whether Mr. Bracknell is

substantially limited in the major life activity of breathing. The Eleventh

Circuit Court of Appeals has not yet addressed the issue of what constitutes

a substantial limitation on the major life activity of breathing. A survey of

the decisions of other federal circuit and district courts, however, supports

the court's conclusion in this case.[7]

---

[7]In *Cross v. Delta Airlines, Inc.*, 2000 U.S. Dist. LEXIS 21026, *10–12 (N.D. Ga. April 6, 2000), the United States District Court for the Northern District of Georgia summarized the case law addressing substantial limitations on the major life activity of breathing as follows:

> [C]ourts have found that a genuine issue of fact exists as to whether certain severe asthmatics are disabled pursuant to the ADA on grounds that they are substantially limited in the major life activity of breathing. *See e.g., Hendler v. Intelecom USA, Inc.*, 963 F. Supp. 200, 207 (E.D.N.Y. 1997) (genuine issue of material fact existed as to whether asthmatic was substantially limited in breathing where he required emergency treatment on four occasions and suffered severe wheezing and an inability to walk more than a few steps without breathing difficulty); *Geuss v. Pfizer, Inc.*, 971 F. Supp. 164, 169-70 (E.D. Pa. 1996) (triable issue of disability where plaintiff typically suffered one to two asthma attacks per day and could not run one hundred feet down a short driveway to pick up his son without triggering asthma attack).
>
> In other cases, however, courts have concluded that asbestosis sufferers, allergy sufferers, less severe asthmatics, and even some individuals with cystic fibrosis are not disabled within the meaning of the ADA because their breathing is not substantially limited. *See e.g., Muller v. Costello*, 187 F.3d 298, 314-15 (2d Cir. 1999) (asthmatic plaintiff with 45% diminished lung function when

In addition, Mr. Bracknell's own testimony and legal arguments tend to refute his claim that he is substantially limited in the major life activity of breathing.  In his deposition, Mr. Bracknell stated that he walks on a treadmill five times a week, hunts, fishes, travels, and rides a motorcycle. (Doc. 45, Exhibit 1 at 127–35.)  He also argues throughout his brief and

experiencing asthma attack was not disabled); *Land v. Baptist Medical Center*, 164 F.3d 423, 424-25 (8th Cir. 1999) (upholding district court's decision that sufferer of peanut allergy was not substantially limited in breathing); *Ventura v. City of Independence*, 1997 U.S. App. LEXIS 4102, 1997 WL 94688, at *7 (6th Cir. 1997) (finding that asthmatic plaintiff was not disabled because he was able to engage in a number of activities, including occasional running, football, calisthenics, playing the saxophone and water skiing); *Robinson v. Global Marine Drilling Co.*, 101 F.3d 35, 37 (5th Cir. 1996) (reversing trial court's denial of motion for judgment as a matter of law where plaintiff's asbestosis, despite 50 % reduced lung capacity, only caused shortness of breath while climbing stairs); *Castro v. Local 1199, Employees Union*, 964 F. Supp. 719, 725 (S.D.N.Y. 1997) (granting employer summary judgment where plaintiff stated that her asthma restricted only her ability to go outside in extreme temperatures); *Emery v. Caravan of Dreams, Inc.*, 879 F. Supp. 640, 642-43 (N.D. Tex. 1995) (plaintiff, despite suffering from cystic fibrosis, was not disabled within ADA); *Heilweil v. Mount Sinai Hospital*, 32 F.3d 718, 723 (2d Cir. 1994) (plaintiff with asthma who is not limited in her ability to participate in recreational sports and exercise is not handicapped pursuant to the Rehabilitation Act).

asserts in his complaint that IP should have allowed him to return to work and/or placed him in any number of allegedly vacant positions when his medical leave expired in July of 2001 because he was physically able to work. (Doc. 12 at 3–6; Doc. 70 at 3–4,11–15.) In short, Mr. Bracknell has failed to present any evidence from which a reasonable jury could find that he is substantially limited in the major life activity of breathing.

### b.    Working

Mr. Bracknell has also failed to provide any evidence that he is substantially limited in the major life activity of working. "When the major life activity under consideration is that of working," the U.S. Supreme Court has held that "the statutory phrase 'substantially limits' requires, at a minimum, that the plaintiffs allege they are unable to work in a broad class of jobs." *Sutton*, 527 U.S. at 491. The EEOC regulations specify that the "term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). "The inability to perform a single,

particular job does not constitute a substantial limitation in the major life activity of working." *Id.*

The EEOC regulations also enumerate additional factors that can be taken into consideration when determining whether an individual is substantially limited in the major life activity of working:

> (A)  The geographical area to which the individual has reasonable access;
> (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
> (C) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

*Id.* § 1630.2(j)(3)(ii).   The U.S. Supreme Court has interpreted these guidelines to mean that if "jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs." *Sutton,* 527 U.S. at 492. "Similarly, if a host of

different types of jobs are available, one is not precluded from a broad range of jobs." *Id.*

Other than a bare allegation in his complaint that he is substantially limited from working in a class of jobs or broad range of jobs (Doc. 12 at 2), Mr. Bracknell has not shown any evidence that his respiratory ailments preclude him from working in a broad range of jobs or class of jobs. At most, Mr. Bracknell has submitted evidence that he was unable to perform the job of a saw filer on his assigned shift and was restricted in his ability to work in one utility position at the Tuskalusa Lumber Mill. He has not pointed to any evidence that he would be precluded from working in those jobs at other work facilities or that those jobs do not exist outside the Tuskalusa facility. He has not shown any evidence that he is incapable of performing other jobs at the Tuskalusa facility. In fact, as discussed previously, Mr. Bracknell asserts throughout his complaint and brief that he should have been reinstated to his old position or transferred to other positions or shifts at the mill. (Doc. 12 at 3–6; Doc. 70 at 3–4,11–15.) More importantly, Mr. Bracknell has not produced any evidence that jobs utilizing his skills are unavailable to him in his area because of his respiratory

impairment. In fact, the evidence supports a conclusion to the contrary. In his deposition, Mr. Bracknell testified that after leaving the Tuskalusa Lumber Mill, he has worked in a maintenance position for the Bibb County Commission and is currently employed on the production line in a Mercedes plant. (Doc. 45, Exhibit 1 at 32–39, 149–53.)

"Although a plaintiff seeking recovery under the ADA is not required to prove a comprehensive list of jobs which [he] cannot perform, the person must provide some evidence beyond the mere existence and impact of a physical impairment to survive summary judgment. *Swain v. Hillsborough County School Bd.*, 146 F.3d 855, 858 (11th Cir. 1998). Mr. Bracknell has failed to provide any evidence from which a reasonable jury could find that he is substantially limited in the major life activity of working. Because Mr. Bracknell has not established through sufficient evidence that his respiratory impairment substantially limits *any* major life activity, no reasonable factfinder could conclude that he meets the requirements of the first definition for "disability" under the ADA.

2.    Record of Such Impairment

Under the ADA's second definition of "disability," an individual is disabled if he has a record of an impairment that substantially limited a major life activity.    According to the EEOC, having a record of a substantially limiting impairment "means [the plaintiff] has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). A plaintiff cannot meet the requirements of this definition through the production of evidence showing only that he has a record of an impairment. Rather, the record must demonstrate an impairment that substantially limited one or more major life activities. *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1229 (11th Cir. 1999).  In addition, the record must be relied on by the employer. *Id.*

Mr. Bracknell does not argue that he was misclassified as having a disability.  Further, the only history of an impairment that he asserts in his brief is that "[d]uring the 1990's, [he began] to have "significant difficulty breathing and, as a result, . . . visited various doctors." (Doc. 70 at 2.) Mr. Bracknell has failed to show a record exists that indicates an impairment

that substantially limited one or more major life activities.  Even if he was

able to demonstrate the existence of such a record, he has not offered any

evidence that IP relied on that record.  Assuming that everything Mr.

Bracknell says is true, past difficulty breathing and visits to doctors only

establish that the plaintiff suffered an impairment—not that the impairment

substantially limited any major life activity.  Because Mr. Bracknell has not

provided any evidence from which a reasonable factfinder could conclude

that he had a record of an impairment that substantially limited a major life

activity upon which IP relied, he cannot meet the requirements for the

second statutory definition of "disability" under the ADA.

> 3.     Regarded as Having Such an Impairment

The ADA's final definition of "disability" includes individuals who are

"regarded as" disabled.  The EEOC regulations specify that a person is

regarded as being disabled if he:

> (1) Has a physical or mental impairment that does
> not substantially limit major life activities but is
> treated by a covered entity as constituting such
> limitation;
> (2) Has a physical or mental impairment that
> substantially limits major life activities only as a

> result of the attitudes of others toward such impairment; or
> (3) Has [no physical or mental impairment] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1640.2(*l*).  The Eleventh Circuit has held that, "for a plaintiff to prevail under this theory, he must show two things: (1) that the perceived disability involves a major life activity; and (2) that the perceived disability is 'substantially limiting' and significant." *Rossbach v. City of Miami*, 371 F.3d 1354, 1360 (11th Cir. 2004) (citing *Sutton v. Lader*, 185 F.3d 1203, 1209 (11th Cir. 1999)).

In order to support his allegation that IP regarded him as having a disability under the ADA, Mr. Bracknell asserts in his brief in response to Defendant's motion for summary judgment that Samuel Johnson, the Human Resources Manager, and Bruce Harris were "well aware that Bracknell had metal lung disease and difficulty breathing." (Doc. 70 at 3.) He makes the bare assertion, again without citation, that he had a history of impairment (*Id*. at 10–11), but offers no evidence that the impairment involved a substantial limitation of a major life activity or that the employer had any knowledge about this alleged history.  Mr. Bracknell also argues that IP's

failure to allow him to return to his position as a saw filer and refusal to enact his suggested accommodations are evidence that IP "perceived him as too disabled to work." (*Id*. at 11.)  He says that Mr. Johnson's alleged statement that Dr. Poliner, the company physician, said that he "did not want anyone working in the plant who had a lung problem," is also evidence Mr. Bracknell was perceived as having a disability.  (Doc. 70 at 5.)

The plaintiff confuses awareness of an impairment with regarding an individual as having a disability under the ADA.  Mr. Bracknell has presented evidence that IP was aware of his respiratory impairment.  He has failed, however, to present any evidence that IP believed this impairment significantly limited any of Mr. Bracknell's major life activities.  Mr. Bracknell appears to be arguing that IP regarded him as being substantially limited in the major life activities of breathing and working.  The court will address each of these assertions separately.

First, an acknowledgment of a breathing difficulty, awareness of a diagnosis of lung disease, and a reference to a "lung problem," does not, alone, indicate that IP regarded Mr. Bracknell as substantially limited in the major life activity of breathing.  Mr. Bracknell has not pointed to any

evidence that IP believed that his overall respiratory function was permanently or significantly restricted because of his impairment, or treated him as if he had such a restriction. At most, Mr. Bracknell has only presented evidence that IP knew he had a sensitivity to hard metal dust and developed difficulties breathing when he worked in his position as a saw filer.

Second, Mr. Bracknell has failed to point to any evidence that IP regarded him as substantially limited in the major life activity of working. Mr. Bracknell has shown evidence that IP regarded him as incapable of returning to his position as a saw filer and may have believed he was unable to work in any job at the Tuskalusa facility. Mr. Bracknell has not shown, however, that IP regarded him as unable to work in a broad range or class of jobs or that IP believed there were no jobs available to him in the area because of his respiratory impairment. In fact, the evidence shows that IP later gave Mr. Bracknell a job as a utility worker after receiving a written work release from Dr. Champion. In addition, the fact that IP refused to accept Mr. Bracknell's suggested accommodations cannot be used to prove IP regarded Mr. Bracknell as being substantially limited in the major life

activity of working.    Rather, that evidence tends to suggest the opposite—that IP believed Mr. Bracknell did not have a disability that entitled him to accommodation under the law.

Mr. Bracknell has not provided any evidence from which a reasonable jury could conclude that IP regarded him as having an impairment that substantially limited a major life activity.    Thus, he cannot meet the requirements for the final statutory definition of "disability" under the ADA. Because Mr. Bracknell has not produced sufficient evidence from which a reasonable factfinder could conclude that he is "disabled" within the meaning of the ADA, he is not entitled to reasonable accommodation and the protection of the Act.  The court need not, therefore, analyze whether Mr. Bracknell can establish the remaining elements of his prima facie case. Summary judgment is due to be granted on Mr. Bracknell's claims of discrimination and failure to accommodate under the ADA.

B.    ADA Retaliation

Mr. Bracknell also alleged in his complaint that he "suffered retaliation under the ADA, in that when he asked for a reasonable accommodation, Defendant failed or refused to allow Plaintiff to return to work." (Doc. 12

at 5.)  In its motion for summary judgment, IP contends that Mr. Bracknell has failed to establish a prima facie case of retaliation under the Act.  (Doc. 43 at 2.)  The Eleventh Circuit Court of Appeals has held that ADA retaliation claims are analyzed under the same framework as Title VII retaliation claims.  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998) (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997)).  Thus, in order to establish a prima facie case of retaliation under the ADA, a plaintiff must show "(1) that he engaged in statutorily protected activity; (2) that he suffered an adverse employment action; and (3) a causal link between the protected activity and the adverse action."  *Id.*

In his complaint, Mr. Bracknell identifies his requests for reasonable accommodations as his statutorily protected activity.  (Doc. 12 at 5.)  In his brief, however, the plaintiff changes this argument and argues that he "engaged in statutorily protected activity by, *inter alia*, filing an EEOC charge of discrimination."  (Doc. 70 at 16.)  Whether the activity alleged is the filing of the EEOC charge of discrimination or requesting reasonable accommodation, Mr. Bracknell cannot show that these actions constitute

statutorily protected activity under the ADA.  To meet this requirement, the Eleventh Circuit Court of Appeals has held that "an employee [must] have a good faith, objectively reasonable belief that his activity is protected by the statute."    *Standard*, 161 F.3d at 1328.  "[A] plaintiff's burden under this standard has *both* a subjective *and* an objective component." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312 (11th Cir. 2002) (emphasis added).  "It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable." *Id.*

In *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318 (11th Cir. 1998), the Eleventh Circuit Court of Appeals held that this standard demands more from a plaintiff than evidence of a physical impairment.  Rather, the Court held that a plaintiff must be able to point to some evidence that gave him reason to consider his impairment qualified as a disability under the law. *Id.* at 1328–29. Mr. Bracknell's evidence does not show that at the time he requested accommodations or filed his EEOC complaint, it was objectively

reasonable to believe that his respiratory impairments qualified as a disability under the ADA.

However, even if Mr. Bracknell had shown that he had an objectively reasonable belief that he qualified as disabled and the actions he took were protected under the ADA, he has not provided any evidence that he suffered adverse employment actions. In his complaint, the plaintiff identifies IP's alleged failure or refusal "to allow Plaintiff to return to work" as the adverse employment action in dispute. (Doc. 12 at 5.) Once again, however, Mr. Bracknell changes his argument and asserts in his brief that IP also retaliated against him by giving him a job at "one of the least desirable positions in the plant, as it required an employee to work behind a curve saw."[8] (Doc. 70 at 7.) Mr. Bracknell also alleged additional acts of retaliation for failures by IP employees to allow him accommodations at this

---

[8]Plaintiff also argues that he was refused severance pay. (Doc. 70 at 16.) Both parties have made oral representations to the court, however, that this is not an issue in this case. Mr. Bracknell attempted to amend his complaint to add a charge of retaliation based on IP's alleged refusal to pay him a severance package in a motion filed on November 24, 2003. (Doc. 46.) Both parties orally communicated to the court that they agree that this motion was orally denied by Judge Clemon when the case was before him and the plaintiff filed a separate lawsuit based on the severance pay claim.

new position. Mr. Bracknell argues that he was not allowed to wear a paper mask or work in an area that was not directly behind the saw. (*Id.*)

A plaintiff who is not entitled to accommodations under the ADA cannot make a failure to accommodate the basis of an ADA retaliation claim. The Eleventh Circuit Court of Appeals has made it clear that a plaintiff's allegations of adverse actions that are merely repeated assertions of a failure to accommodate are insufficient to defeat summary judgment on an ADA retaliation claim when the discrimination claims have already failed. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1288 (11th Cir. 1997). Mr. Bracknell's complaints of retaliation based on alleged failures to accommodate are nothing more than an attempt to "reclothe" his discrimination claim. *Lucas*, 257 F.3d at 1261.

Mr. Bracknell's placement in a vacant utility position behind a curve saw also is not an adverse employment action. Mr. Bracknell argues that IP "required" him to work in this position (Doc. 70 at 17), and says he had "no

other option" but to accept the position (*Id.* at 7).[9]   At the time Mr. Bracknell was assigned to the utility position, however, IP had no duty under the ADA to transfer Mr. Bracknell to another position or find him another job. In fact, IP gave Mr. Bracknell a job as a utility worker when he was not able to work in his old position as a saw filer and had no job.[10]  Because IP had no duty under the ADA to give the plaintiff a new job when he could not return to his previous position, placing Mr. Bracknell in a new position as a utility worker cannot constitute an adverse employment action.

Mr. Bracknell has not provided sufficient evidence to establish that he meets either of the first two elements of a prima facie case of retaliation under the ADA.  Thus, it is unnecessary for the court to continue with an analysis of the causation requirement, and summary judgment is due to be granted on this claim.

---

[9]However, Mr. Bracknell asserts in another portion of his brief that he was willing to return to work "for a lower pay as 'a job was better than no job.'" (Doc. 70 at 8 n.13.)

[10]The evidence also indicates that IP paid him the same salary Mr. Bracknell made in his old position. (Doc. 45, Exhibit 2 at 316.) (This fact was proposed by the defendant and was never disputed by the plaintiff.)

C.    FMLA Claim

Mr. Bracknell alleges in his complaint that IP violated the FMLA by refusing to reinstate him after the expiration of his medical leave. (Doc. 12 at 1, 6.) In its motion for summary judgment, IP contends that Mr. Bracknell cannot establish any such violation of the Act. (Doc. 43 at 2–3.) Under the FMLA, eligible employees are entitled to (1) "12 workweeks of leave during any 12-month period . . . because of a serious health condition[11] that makes the employee unable to perform the functions of the position of such employee," 29 U.S.C. § 2612(a)(1), and (2) the right "to be restored [following that leave] to the position of employment held by the employee when the leave commenced [or] to an equivalent position," *Id.* § 2614(a)(1). *See also Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001). Mr. Bracknell does not assert in his complaint or his brief to the court that he was denied appropriate leave under the FMLA. Rather, the plaintiff claims that IP violated the FMLA by failing to restore him to the same or equivalent position he held prior to taking his leave. (Doc. 12 at 6.)

---

[11]Defendant IP never contests Mr. Bracknell's assertion that he suffered a serious health condition that merited medical leave under the FMLA.

Mr. Bracknell, however, does not dispute that he was unable to return to his "same" job as a saw filer on his assigned shift when his FMLA leave expired in July of 2001. Instead, he alleges throughout his brief in response to Defendant's motion for summary judgment that IP had a duty to place him in *another* position at the Tuskalusa Lumber Mill that was equivalent to the position he had prior to taking his FMLA leave.[12] Mr. Bracknell specifically argues that he "requested to return to his position on the midnight shift. However, . . . IP refused to allow [Mr.] Bracknell to return to this job. At the very least, an issue of fact exists as to whether the saw filer position on the midnight shift would have been the 'same or an equivalent position.'" (Doc. 70 at 19.) Mr. Bracknell, however, was not working as a saw filer on

---

[12]Plaintiff argues elsewhere in his brief that he was denied the opportunity to return to his old position as a saw filer at his assigned shift with a respirator. (Doc. 70 at 5.) Yet, according to the plaintiff's account of the facts of this case, this was not an option until January of 2002—well after the expiration of Mr. Bracknell's twelve weeks of FMLA leave. Even if this had been an option at the time of the expiration of the plaintiff's FMLA leave, the court's analysis and conclusion would be the same. Because Mr. Bracknell was not disabled under the ADA, he was not entitled to the accommodation of a respirator under that Act. *See* analysis *supra*. The FMLA does not provide for any right or benefit of employment that the employee was not entitled to prior to taking FMLA leave. 29 U.S.C. § 2614(a)(3). Because Mr. Bracknell was not entitled to an accommodation as a saw filer on his particular shift if he had never taken FMLA leave, he cannot argue that there is now a violation of the FMLA if the defendant does not give him that accommodation after taking FMLA leave.

the midnight shift when he took leave under the FMLA, and he never disputes the fact that when he returned from his leave, he could not work in his original position because of hard metal dust.

The substantive rights of the FMLA are, despite the plaintiff's assertions in this case, limited.  The Act provides that "[n]othing in this section shall be construed to entitle any restored employee to . . . any *right, benefit, or position of employment* other than any right, benefit, or position to which the employee would have been entitled had the employee *not* taken the leave."  29 U.S.C. § 2614(a)(3) (emphasis added).  Mr. Bracknell has not pointed to any evidence that he would have been entitled to a transfer to the midnight shift had he never taken FMLA leave.  Because Mr. Bracknell has not provided sufficient evidence that he is "disabled" for the purposes of the ADA, he has not established that he had a right to any such accommodation.  IP did not deny Mr. Bracknell restoration to his original position; Mr. Bracknell never sought reinstatement to that position when he returned from his FMLA leave and was, in fact, unable to return to that position.  IP denied Mr. Bracknell benefits and transfers to which he had no legal claim under the FMLA or ADA.  Thus, Mr. Bracknell has not produced

any evidence from which a reasonable factfinder could conclude that IP violated the FMLA, and summary judgment is therefore due to be granted on his substantive FMLA claim.

### D.   FMLA Retaliation

Finally, Mr. Bracknell alleges in his complaint that IP retaliated against him for seeking leave under the FMLA.  (Doc. 12 at 1, 6.)  IP counters in its motion for summary judgment that Mr. Bracknell cannot establish he suffered any such retaliation.  (Doc. 43 at 3.)  The Eleventh Circuit does recognize a claim of retaliation under the FMLA.  *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001).  In order to succeed on a retaliation claim, however, a plaintiff must "demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right."  *Id.* at 1207.  The analytical framework for an FMLA retaliation claim mirrors that of claims brought under Title VII and the ADA, as discussed above.  *Graham v. State Farm Mutual Ins.*, 193 F.3d 1274, 1283 (11 Cir. 1999).  To establish a prima facie case, a plaintiff must show that "(1) [he] availed [himself] of a protected right; (2) [he] suffered an adverse employment decision; and (3)

there is a causal connection between the protected activity and the adverse employment decision." *Cash v. Smith*, 231 F.3d 1301, 1307 (11 Cir. 2000).

Mr. Bracknell appears to assert that he suffered retaliation for availing himself of the protected right of taking medical leave under the FMLA. (Doc. 12 at 1, 6.)[13]  He has not shown, however, evidence of any adverse employment actions.  In his brief, Mr. Bracknell only identifies his placement in the utility position as an adverse employment action for his FMLA retaliation claim.[14]  Yet, as examined previously, Mr. Bracknell's placement in a vacant utility position was not an adverse employment action.  IP had no duty to transfer Mr. Bracknell or find him another job, but they gave him a new position when he had no job and paid him at his previous wage level.  In addition, Mr. Bracknell has not provided any evidence to establish a causal link between his taking FMLA leave and his

---

[13]The only other right an individual may enforce under the FMLA is the right to reinstatement.  As discussed previously in this court's opinion, however, Mr. Bracknell's requests that he be placed in different positions were not requests for reinstatement, but requests for accommodations that are not protected under the FMLA. *See* discussion *supra.*

[14]Mr. Bracknell also mentions IP's alleged refusal to pay a severance package.  As stated above, both parties notified the court that this is not an issue in this case. *See supra* note 8.

assignment to the vacant utility position.  Mr. Bracknell argues that the timing of the events raises an issue of material fact, but his FMLA leave expired in July of 2001 and he was not assigned to the utility worker position until January or February of 2002.[15]   Because Mr. Bracknell has not established a prima facie case of retaliation under the FMLA, summary judgment is due to be granted on this claim as well.

V.   Conclusion

Defendant's motion for summary judgment is due to be granted in all respects.  A separate order will be entered in conformity with this opinion.

Done, this 30th of  September, 2004.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

---

[15]A short lapse in time between an employee's protected conduct and an adverse employment action can create an issue of material fact.  *Strickland v. Waterworks & Sewer Bd.*, 239 F.3d 1199, 1207 (11th Cir. 2001).  A time period of approximately six months, however, is insufficient to raise the required inference of causation in this case.